# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00046-COA

**MEIKA DESEAN BRITTON A/K/A M. DESEAN**          **APPELLANT**
**BRITTON A/K/A MEIKA D. BRITTON A/K/A**
**MEIKE BRITTON A/K/A MEIKA BRITTON**
**A/K/A MEIKO DESEAN BRITTON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2017 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MEIKA DESEAN BRITTON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/27/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND TINDELL, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1. In this appeal, we must determine if Meika Britton's postrelease supervision (PRS) was properly revoked. Finding no error, we affirm.

## PROCEDURAL HISTORY

¶2. Britton was convicted of child exploitation and sentenced to serve five years in the custody of the Mississippi Department of Corrections (MDOC), followed by ten years of PRS. Upon release from prison, Britton was charged with committing child exploitation and contributing to the delinquency of a minor. The State moved to revoke Britton's PRS based

upon his new crimes and his failure to pay court-ordered fees. After a revocation hearing conducted over two days on April 18, 2016, and May 13, 2016, the trial court revoked Britton's PRS and ordered him to serve ten years in the custody of the MDOC.

¶3.     Britton subsequently filed a motion to "reinstate" his PRS.[1] Treating this as a motion for postconviction relief (PCR), the trial court found Britton's arguments to be without merit and denied his motion. Britton now appeals, asserting the following issues: (1) minimum due-process requirements were not met at his revocation hearing; (2) counsel provided ineffective assistance; (3) insufficient evidence was presented to support the revocation; and (4) his cell phone was searched without a valid search warrant.

## STANDARD OF REVIEW

¶4.     Absent a finding that the "ruling was clearly erroneous[,]" this Court will not reverse a trial court's denial of a PCR motion. *Jones v. State*, 994 So. 2d 829, 830 (¶4) (Miss. Ct. App. 2008) (citing *Kirksey v. State*, 728 So. 2d 565, 567 (¶8) (Miss. 1999)). "However, when issues of law are raised, the proper standard of review is de novo." *Steele v. State*, 991 So. 2d 176, 177 (¶3) (Miss. Ct. App. 2008) (citing *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999)).

## DISCUSSION

### I.     Due-Process Requirements

---

[1] We note that this is Britton's second motion for postconviction relief. This Court affirmed the dismissal of his first PCR motion in *Britton v. State*, 130 So. 3d 90, 92 (¶1) (Miss. Ct. App. 2013). Ordinarily successive PCR motions are barred from our review. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2015). However, a claim that a petitioner's conditional release was unlawfully revoked is an exception to the successive-writ bar. *See id.*

¶5. In his first issue, Britton argues that minimum due-process requirements were not met at his revocation hearing in the following ways: he did not receive adequate notice of the revocation hearing; the evidence against him was not disclosed prior to the revocation hearing; he was not permitted to confront the witnesses against him; and the trial court did not provide a statement of the evidence it relied upon for revoking his PRS. Britton also contends that he was denied a preliminary hearing.

¶6. The minimum due-process requirements for a probation-revocation hearing are:

> (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing such confrontation); (5) a neutral and detached hearing body or officer; and (6) a written statement by the fact-finder as to the evidence relied on and reasons for revoking the probation.

*Loisel v. State*, 995 So. 2d 850, 852 (¶7) (Miss. Ct. App. 2008) (quoting *Payton v. State*, 845 So. 2d 713, 719 (¶22) (Miss. Ct. App. 2003)); *see also* Miss. Code Ann. § 47-7-34(2) (Rev. 2015) ("Procedure for termination of [PRS] . . . shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence . . . .").

*Notice of the Hearing*

¶7. Britton contends that he did not receive the petition to revoke his PRS until the first day of his hearing, April 18, 2016. Although Britton did not receive the formal petition to revoke his PRS prior to the hearing, the record indicates Britton was notified of the charges against him. Britton was arrested on March 28, 2016, and posted bond on April 1, 2016. A summons was issued on April 11, 2016, setting April 18, 2016, as the date of the revocation

3

hearing. Additionally, Britton admittedly filed several motions in advance of the revocation hearing, including a motion to dismiss the petition to revoke his PRS, a motion to suppress evidence, and a motion to dismiss the charges against him. This issue is without merit.

*Disclosure of Evidence Against Him*

¶8. Britton claims that the evidence against him was not provided until the morning of the second day of his revocation hearing, May 13, 2016. However, Britton did not raise this argument in his PCR motion. Thus, we decline to review it. *Reese v. State*, 21 So. 3d 625, 628 (¶12) (Miss. Ct. App. 2008).

*Right to Confront Witnesses*

¶9. Britton claims he was not allowed to call one of the victims as a witness at the revocation hearing. Britton states that his attorney failed to subpoena this particular witness as Britton had requested. The trial court noted that Britton called several witnesses at the revocation hearing, but not the victim. And Britton did not inform the court that he required the testimony of the victim or request a continuance in order to have the victim subpoenaed. We find no error in the trial court's findings; thus, this issue is without merit.

*Written Statement by Trial Court*

¶10. Britton claims he was not given a written statement by the trial court detailing the reasons for revoking his PRS. In *Grayson v. State*, 648 So. 2d 1129, 1134-35 (Miss. 1994), the supreme court noted that the failure to submit such a written finding does not violate due process where the trial court's oral opinion is contained in the record. At the conclusion of Britton's revocation hearing, the trial court stated that Britton had "done little to refute the

4

serious charges and allegations" against him. The trial court further found that based upon the evidence presented, Britton had violated the terms of his PRS. In its order revoking Britton's PRS, the trial court explained that Britton had violated the terms of his PRS by "committing the new crime of child exploitation and contributing to the delinquency of a minor." This issue is without merit.

*Preliminary Revocation Hearing*

¶11. In its order denying relief, the trial court noted that Britton failed to raise this issue at his revocation hearing; thus, the issue regarding a lack of preliminary revocation hearing was waived. We agree. *See Presley v. State*, 48 So. 3d 526, 528 (¶9) (Miss. 2010). Britton recognizes this and asks us to review his claim for plain error. Since Britton was entitled to a preliminary revocation hearing, he must show that prejudice resulted from the failure to hold a separate preliminary revocation hearing. *See id.* at 530 (¶13). If no prejudice is found and a formal revocation proceeding was held which met minimum due-process requirements as previously stated, then the failure to hold a preliminary hearing is harmless error. *See id.* at (¶15). Here, we find any error was harmless. At his revocation hearing, Britton was afforded due-process protections as required. He has failed to show any prejudice resulting from the lack of a preliminary revocation hearing. This issue is without merit.

## II.    Ineffective Assistance of Counsel

¶12. In his next issue, Britton claims he received ineffective assistance of counsel. The trial court did not officially appoint an attorney to represent Britton; rather, the trial court "out of an abundance of caution" provided an attorney to assist Britton as stand-by counsel.

5

This attorney did subpoena witnesses on Britton's behalf and moved for a continuance. However, Britton proceeded pro se—he filed motions, provided a witness list, and questioned the witnesses. In its order denying Britton's PCR motion, the trial court found that Britton was not entitled to counsel and failed to prove that any assistance provided by his stand-by counsel was ineffective based upon *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶13. On appeal, Britton claims the trial court forced him to proceed pro se. However, nothing in the record indicates this statement is true. In fact, Britton never asked for an appointed attorney and never complained about the performance of his stand-by counsel. "There is no per se right to appointed counsel at a revocation hearing." *Henderson v. State*, 12 So. 3d 26, 30 (¶11) (Miss. Ct. App. 2009). We cannot find the trial court abused its discretion in denying Britton's requested relief. This issue is without merit.

### III. Insufficient Evidence

¶14. Britton next argues that his revocation was based upon false testimony. We first note that Britton was never convicted of the crimes that his revocation was based upon. However, "a conviction is not necessary to revoke probation. Probation may be revoked upon a showing that the defendant 'more likely than not' violated the terms of probation." *Younger v. State*, 749 So. 2d 219, 222 (¶12) (Miss. Ct. App. 1999) (internal citation omitted).

¶15. While on PRS, Britton was arrested for child exploitation and contributing to the delinquency of a minor. During the hearing, the State presented evidence that Britton "more likely than not" provided minors with alcohol and cigarettes. There was also testimony that

Britton asked a minor to film other minors engaging in sexual acts.

¶16. Britton's chief complaint concerns the testimony of Officer Brandon Rushing, an investigator with the Southaven Police Department. Officer Rushing had received complaints from concerned parents regarding text messages between their fourteen-year-old daughter and Britton, who was forty-six years old at the time. While investigating Britton, Officer Rushing gained access to Facebook Messenger conversations between Britton and two minor males, one fifteen years old and the other seventeen years old.

¶17. In the messages between Britton and the seventeen-year-old, Britton asked the boy to film a sexual act involving several other minors. At one point Britton wrote, "I want to see your _ _ _ _." The boy responded, "Hell, no." Officer Rushing interviewed the seventeen-year-old, who told Officer Rushing that he thought Britton wanted a picture of his penis. Officer Rushing testified that the seventeen-year-old interpreted Britton's request this way based upon prior messages with Britton where Britton referenced viewing a masturbation video of the seventeen-year-old. Officer Rushing testified that Britton referenced this video several times during his exchange with the minor, at one point writing to the minor, "The best part was when you come and the face you make."

¶18. Britton claims that Officer Rushing should not have been allowed to assume Britton was asking for a picture of the child's penis. And that the trial court mistakenly relied upon Officer Rushing's testimony in revoking Britton's PRS. However, Officer Rushing clearly stated that he believed Britton was asking for a picture of the child's penis based upon his interview with the child and reading other messages between Britton and the child.

Furthermore, the trial court did not rely solely upon this particular message in revoking Britton's PRS.

¶19. Officer Rushing also testified regarding the content of the conversations between Britton and the fifteen-year-old involving a request for Britton to buy him alcohol and cigarettes. In this conversation, Britton referenced a massage he had given the fifteen-year-old, stating, "But funny is on the massage you got hard LOL." After Britton demanded the child "admit the truth," the fifteen-year-old admitted that he became aroused during the massage.

¶20. Additionally, Officer Rushing interviewed the fourteen-year-old girl regarding the text messages between her and Britton. She told Officer Rushing that Britton had given alcohol to several of her friends, all of whom were minors at the time.

¶21. From the record, we cannot find the trial court erred in finding that Britton more likely than not had violated his PRS by contributing to the delinquency of a minor and committing child exploitation. This issue is without merit.

## IV. Search Warrant

¶22. In a supplemental brief, Britton claims that his cell phone was searched without a valid warrant. However, Britton never raised this issue before the trial court; thus, the issue is procedurally barred. *Reese*, 21 So. 3d at 629 (¶12). Regardless, Officer Rushing testified that he did get a search warrant to view the contents of Britton's cell phone. This issue is without merit.

¶23. **AFFIRMED.**

8

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**